T.C. Summary Opinion 2008-74

UNITED STATES TAX COURT

JOSEPH B. YAKUBIK, Petitioner,
AND SUSAN M. (YAKUBIK) WILEY, Intervenor
<u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21773-06S.                Filed June 26, 2008.

Joseph B. Yakubik, pro se.

Susan M. (Yakubik) Wiley, pro se.

<u>Denise A. DiLoreto</u>, for respondent.

GOEKE, <u>Judge</u>:  This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in

effect at the time the petition was filed.  Pursuant to section

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Petitioner seeks review of respondent's determination denying him relief from joint and several liability for the 2003 tax year under section 6015(b), (c), and (f).

We review respondent's determination for an abuse of discretion, and for the reasons explained herein we find respondent's determination denying petitioner relief from joint and several liability under section 6015(f) was in error.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in West Virginia.

Petitioner and intervenor were married throughout 2003 and divorced on June 8, 2005. During 2003 intervenor was employed by a local attorney as a paralegal. Intervenor earned wages, was paid by check, and received a Form W-2, Wage and Tax Statement, at the end of 2003. Intervenor earned about $4,455 in wages during 2003.

At some point during 2003, intervenor began to embezzle funds from her employer. In addition to this embezzlement intervenor began to write bad checks from petitioner and intervenor's joint bank account and to forge checks belonging to

petitioner's stepfather. It is unclear from the record whether intervenor stole checks from petitioner's stepfather and used them to make purchases or stole checks issued to petitioner's stepfather and forged the endorsement in order to cash those checks.

Intervenor was arrested for allegedly committing a number of felonies. Pursuant to a plea agreement intervenor pleaded guilty to a number of felonies including forgery and embezzlement. On December 1, 2003, intervenor was sentenced in the Circuit Court of Randolph County, West Virginia, to a term of not less than 1 but no more than 10 years in State prison. Intervenor was also ordered to pay restitution of $17,000 to her former employer and to pay $3,000 to petitioner's stepfather for the forged checks. Intervenor was incarcerated from October 20, 2003, to November 9, 2005, and was paroled on November 9, 2005.

On March 8, 2004, petitioner and intervenor filed a joint Form 1040, U.S. Individual Income Tax Return, for tax year 2003. Although intervenor was incarcerated at the time, she executed a Form 2848, Power of Attorney and Declaration of Representative, for tax year 2003 giving petitioner the authority to act on her behalf. Petitioner used this authority to file their joint return. Petitioner and intervenor failed to include on the joint return the amount intervenor embezzled from her former employer, the amount of forged checks related to petitioner's stepfather,

or the wages intervenor earned as a paralegal. On the basis of the Form 1040, respondent issued to petitioner a refund of $5,017. Because petitioner did not report the embezzled funds and wages on the joint return, petitioner and intervenor qualified for an earned income credit that they would not have qualified for had those amounts been included in income.

Petitioner did not file an amended return after receiving the Form W-2 from intervenor's employer. Respondent examined the joint return and issued a notice of deficiency (the notice) on May 31, 2005. The notice determined that the $17,000 intervenor embezzled and the $4,455 intervenor earned should have been included in income. The notice did not include in income the $3,000 worth of forged checks. Respondent determined an increase of $5,188 in petitioner and intervenor's tax liability and an accuracy-related penalty of $996 under section 6662. Neither petitioner nor intervenor petitioned this Court to challenge respondent's determinations in the notice.

On or about December 28, 2005, petitioner submitted a Form 8857, Request for Innocent Spouse Relief. On January 26, 2006, respondent notified intervenor by letter of petitioner's request for relief from joint and several liability.

On April 3, 2006, respondent sent separate letters to petitioner and intervenor indicating respondent's preliminary determination to grant petitioner relief from liability under

section 6015(c) and deny relief under section 6015(f). On May 5, 2006, intervenor sent a letter to respondent with attachments disagreeing with respondent's determination regarding petitioner's claim for relief. These attachments included a brief statement of disagreement, a copy of intervenor's sentencing order, and a copy of intervenor's restitution order.

On July 27, 2006, respondent issued a final notice of determination denying petitioner's request for relief from joint and several liability under section 6015(b), (c), and (f). On October 25, 2006, petitioner mailed to the Court a letter that was filed as an imperfect petition. The Court ordered petitioner to submit a proper amended petition to conform with the Rules. On December 14, 2006, the Court received and filed petitioner's amended petition seeking a review of respondent's determinations.

## Discussion

Section 6013(d)(3) provides that taxpayers filing joint Federal income tax returns are jointly and severally liable for the taxes due. Section 6015, however, provides that notwithstanding section 6013(d)(3), under certain facts and circumstances limited relief from joint and several liability may be available under section 6015(b), (c), or (f). Except as otherwise provided in section 6015, the taxpayer seeking relief bears the burden of proof. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

To prevail, the taxpayer must show the Commissioner's determination was arbitrary, capricious, or without sound basis in law or fact.  Butler v. Commissioner, 114 T.C. 276, 291-292 (2000).

Intervenor, as the nonelecting spouse, had the right to intervene in this proceeding by filing a notice of intervention. See sec. 6015(e)(4); Rule 325; Corson v. Commissioner, 114 T.C. 354, 364-365 (2000).  By exercising that right, intervenor became a party to this case.  See Tipton v. Commissioner, 127 T.C. 214, 217 (2006).

Section 6015(b)

Petitioner first seeks relief under section 6015(b).  To qualify for relief pursuant to section 6015(b)(1), the requesting spouse must establish that:  (1) A joint return was filed; (2) there was an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) at the time of signing the return, the spouse seeking relief did not know, and had no reason to know, of the understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency in tax attributable to the understatement; and (5) the requesting spouse seeks relief within 2 years of the first collection activity.

Petitioner's request for relief fails to satisfy section 6015(b)(1)(C).  Petitioner's knowledge of how much money

intervenor embezzled is not clear.  During their marriage they shared a joint bank account, but their testimony varied as to who had access to this account.  Petitioner testified that intervenor maintained control over the account and that he would give his paychecks to intervenor, who would then deposit them into the joint account.  Intervenor, however, testified that petitioner did in fact make deposits to the joint account and also possessed an ATM card he used to make withdrawals.

At trial petitioner testified that he did not include those amounts on the joint return because he did not know how much intervenor had embezzled and because he had never received a Form W-2 for intervenor's employment.  Petitioner later admitted that he had received a Form W-2 for intervenor after he had filed the joint return.  Petitioner testified that although he was present at intervenor's sentencing and knew that she had embezzled funds, he was unaware of the amount because he was not allowed to remain in the courtroom while the prosecutor, the presiding judge, and intervenor discussed how much restitution was to be paid.  Intervenor, however, testified that she had told petitioner the amount of restitution she was ordered to pay and that petitioner knew the amount before filing the joint return.  Although petitioner testified at trial that he was not in the courtroom during the portion of intervenor's sentencing when amounts of restitution were discussed and that he had not received a Form W-

from intervenor's employer until after filing the return, petitioner knew that intervenor had both embezzled funds and earned wages during 2003 and failed to include those amounts on the return.

Petitioner, although unaware of the exact amounts intervenor had embezzled and earned, had reason to know of the understatement.

Section 6015(c)

A taxpayer may elect to seek relief under section 6015(c) if (1) at the time the election was made, the taxpayer was no longer married to, or was legally separated from, the person with whom the joint return was filed, or (2) for the 12-month period preceding the time of making the election the taxpayer did not live with such person. If a taxpayer elects relief under section 6015(c), such taxpayer's "liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual" under section 6015(d). Sec. 6015(c)(1). Relief is not available under section 6015(c) with respect to an unpaid liability reported in a return.

If the Commissioner proves that the electing spouse had actual knowledge at the time he signed the return of any item giving rise to the deficiency and the item was allocable to the nonrequesting spouse, then the election is invalid with respect

to the portion of the deficiency that is attributable to the item.  See sec. 6015(c)(3)(C); sec. 1.6015-3(c)(2), Income Tax Regs.

As stated above, petitioner's request for relief fails to satisfy section 6015(b) because he had reason to know of the items giving rise to the understatement.  In order to determine whether petitioner qualifies for relief under section 6015(c), we must determine whether petitioner had actual knowledge, rather than a reason to know, of the items giving rise to the deficiency.  We believe that petitioner had actual knowledge of intervenor's earnings and embezzled income.  Although petitioner did not know the exact amounts intervenor earned and embezzled, he knew all of the facts surrounding those items.  Petitioner was aware that intervenor had worked throughout the year and had been arrested and sentenced for embezzlement.  Thus, petitioner's request for relief fails to satisfy section 6015(c).

Section 6015(f)

The only remaining opportunity for relief to petitioner is section 6015(f).  Section 6015(f) provides that the Secretary may relieve an individual of joint and several liability if (1) relief is not available to the individual under section 6015(b) or (c), and (2) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency.  The Commissioner has

prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, for determining whether relief should be granted under section 6015(f). To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief under that section was an abuse of discretion. We review respondent's denial of relief under section 6015(f) for an abuse of discretion.

Respondent argues that in evaluating petitioner's request under section 6015(f), we are limited to the administrative record as compiled by respondent. This Court has recently ruled that our review under section 6015(f) is not limited to the administrative record. See Porter v. Commissioner, 130 T.C. ___ (2008). If we find that respondent abused his discretion in denying petitioner relief, we will determine the appropriate relief, rather than remanding the case to the Internal Revenue Service. See Friday v. Commissioner, 124 T.C. 220, 222 (2005).

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, 298, lists seven threshold conditions that the Commissioner considers in determining whether an individual qualifies for equitable relief under section 6015(f). The Commissioner will not grant relief unless these threshold conditions have been met: (1) The taxpayer must have filed joint returns for the taxable years for which relief is sought; (2) the taxpayer does not qualify for relief under section 6015(b) or (c); (3) the taxpayer must apply for relief no later than 2 years after the date of the

Commissioner's first collection activity after July 22, 1998, with respect to the taxpayer; (4) no assets were transferred between the spouses filing the joint returns as part of a fraudulent scheme by such spouses; (5) there were no disqualified assets transferred to the taxpayer by the nonrequesting spouse; (6) the taxpayer did not file the returns with fraudulent intent; and (7) absent enumerated exceptions, the liability from which relief is sought is attributable to an item of the nonrequesting spouse.

Respondent concedes, and we agree, that petitioner satisfies these seven threshold conditions.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, lists eight nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the deficiency and full or partial equitable relief under section 6015(f) should be granted. These nonexclusive factors include whether:  (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship without relief; (3) the requesting spouse did not know or have reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse had a legal obligation to pay the outstanding liability; (5) the requesting spouse received a significant benefit from the

item giving rise to the deficiency; (6) the requesting spouse has made a good faith effort to comply with income tax laws in subsequent years; (7) the requesting spouse was abused by the nonrequesting spouse; and (8) the requesting spouse was in poor mental or physical health when signing the return or requesting relief. Rev. Proc. 2003-61, sec. 4.03(2), further provides that no single factor will controlling; all relevant factors will be considered and weighed appropriately.

1. Petitioner's Marital Status

Petitioner was divorced from intervenor when he sought relief. This factor favors petitioner.

2. Economic Hardship

Respondent's Appeals Office determined that petitioner will not suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.02(1)(c), 2003-2 C.B. at 298, provides that the Commissioner will base this determination on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs., which provides that the requesting spouse will suffer economic hardship if he is unable to pay his reasonable basic living expenses.

Petitioner's request for relief indicates that at the time petitioner sought relief, he was earning $1,200 per month and spending $1,100 per month on his average monthly household expenses. Respondent's Appeals Case Memorandum states that

"[petitioner] has not demonstrated that he would have an economic hardship if required to pay the tax." Respondent's final determination makes no mention of economic hardship and instead relies on petitioner's knowledge of the embezzlement in order to deny relief.

We disagree with respondent on this factor. Petitioner has minimal education and although currently employed, testified credibly that his hours had recently been cut back. The record shows that petitioner would suffer economic hardship if relief were not granted. This factor favors petitioner, and the examiner's evidence in the record supports a determination of hardship.

3. <u>Knowledge or Reason To Know</u>

Respondent's Appeals Office determined that petitioner's knowledge or reason to know of the item giving rise to the deficiency weighed against relief, and we agree.

4. <u>Intervenor's Legal Obligation</u>

Petitioner's and intervenor's divorce agreement is silent as to who is responsible for paying any outstanding taxes. Respondent determined that this factor is neutral, and we agree.

5. <u>Significant Benefit</u>

We consider a lack of a significant benefit to the taxpayer seeking relief from joint and several liability a factor favoring relief. <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167.

Respondent's Appeals officer determined that petitioner had not received any significant benefit. At trial counsel for respondent argued that although petitioner did not receive a significant benefit, he nonetheless benefited and this factor should weigh against relief.

Petitioner testified that a portion of the refund was used (1) to pay restitution for bad checks written by intervenor, (2) to pay past-due bills and rent, and (3) to purchase Christmas gifts for intervenor's children. Intervenor, however, testified that the only restitution payments made on her behalf were made by her and were based upon her earnings while at a work release center. Intervenor testified that she made restitution payments for three bad checks she had written during 2003 because she was required to do so before she could have her driver's license reinstated. Intervenor was unable to recall whether the three bad checks she had paid restitution on in order to reclaim her driver's license were the only bad checks she had written during 2003.

We disagree with respondent on this factor. Petitioner testified credibly at trial how he used the refund to make payments on behalf of intervenor, including restitution on bad checks, paying past-due bills for rent, electricity, and other costs, and for Christmas presents for intervenor's children while she was incarcerated. According to petitioner, intervenor was

responsible for paying household bills before her incarceration but had stopped paying them.  Intervenor never informed petitioner that their living expenses were no longer being paid before her being arrested.  This factor favors granting relief to petitioner.

6.  Good Faith Effort To Comply With Tax Laws

Respondent determined, and we agree, that petitioner has made a good faith effort to comply with tax laws.  Petitioner has filed all required tax returns, and this factor is considered neutral since petitioner was in compliance.

7.  Spousal Abuse

Petitioner did not allege that there was abuse in his former marriage.  Respondent determined that this factor is neutral, and we agree.

8.  Mental or Physical Health

There is no evidence in the record that petitioner suffered any ailment that would have affected his ability to pay his Federal income tax obligations for the years in issue.  Respondent determined that this factor is neutral, and we agree.

Conclusion

In sum, three factors weigh in favor of relief, one factor weighs against relief, and four factors are neutral.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B), provides that in deficiency cases, reason to know of the item giving rise to the deficiency

will not be given more weight than other factors, but that actual knowledge of the item weighs heavily against relief.  Actual knowledge weighing against relief may be overcome if those factors weighing in favor of relief are particularly compelling. Id.

Petitioner's lack of significant benefit, his marital status, and the prospect of economic hardship are sufficiently compelling and outweigh petitioner's knowledge of intervenor's earnings and embezzled income.  Taking into account all of the facts and circumstances, we find that it would be inequitable to deny petitioner relief from joint and several liability.  We hereby conclude on the facts of this case that respondent has abused his discretion in denying petitioner relief from joint and several liability under section 6015(f).

To reflect the foregoing,

Decision will be entered for petitioner.