155 T.C. No. 6

UNITED STATES TAX COURT

DONNA M. SUTHERLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3634-18.                                    Filed September 8, 2020.

In 2010 P's husband was convicted of tax crimes. As part of a plea agreement he was required to file delinquent returns for 2005 and 2006. Just before his sentencing P signed joint returns with him for those years.

In August 2016 P filed a request for innocent spouse relief for 2005 and 2006. During the administrative review process P's representative concluded that R's Appeals officer was incorrectly applying the factors to determine P's eligibility for relief. At that time the scope and standard of review in this Court for stand-alone innocent spouse cases were de novo. See Porter v. Commissioner, 132 T.C. 203, 206-210 (2009). Believing that his client would fare better before this Court P's representative declined to make further evidentiary submissions, and on November 15, 2017, R issued a determination letter denying P's request for relief. On February 20, 2018, P filed a timely petition for review.

The Taxpayer First Act (Act), Pub. L. No. 116-25, sec. 1203, 133 Stat. at 988 (2019), added I.R.C. sec. 6015(e)(7) and (f)(2). I.R.C. sec. 6015(e)(7) limits this Court's review of the determination in cases such as this to "(A) the administrative record established at the time of the determination, and (B) any newly discovered or previously unavailable evidence." Congress specified that the amendments effected by Act sec. 1203(b) "shall apply to petitions or requests filed or pending on or after the date of the enactment of this Act," July 1, 2019.

On November 11, 2019, P filed a motion to remand. She contends that if I.R.C. sec. 6015(e)(7) had been in effect when her request was pending with R she would have submitted additional evidence into the administrative record. P acknowledges that remand is typically not permitted in stand-alone innocent spouse cases. See Friday v. Commissioner, 124 T.C. 220 (2005). But she urges that, in light of the amendment to the scope of review, we should reconsider that holding as applied to this case.

Held: I.R.C. sec. 6015(e)(7) is applicable to petitions filed in this Court on or after July 1, 2019. Because P's petition was filed before July 1, 2019, I.R.C. sec. 6015(e)(7) does not apply to this case.

Held, further, because a de novo scope and standard of review apply to P's request, P's motion to remand would serve no useful purpose and will be denied for that reason.


David M. Klemm, Craig E. Reeder, and James H. Everett, for petitioner.

Carlton W. King and Nina P. Ching, for respondent.

OPINION

LAUBER, Judge:  This stand-alone innocent spouse case is currently before the Court on petitioner's motion to remand.  The Internal Revenue Service (IRS or respondent) opposes the motion, citing our holding in Friday v. Commissioner, 124 T.C. 220, 222 (2005), that we may not remand stand-alone innocent spouse cases.  Petitioner asks that we reconsider that holding in light of Congress' 2019 amendment adding section 6015(e)(7),[1] which limits the scope of our review in such cases to "(A) the administrative record established at the time of the determination, and (B) any additional newly discovered or previously unavailable evidence."  Believing that the scope of review as thus revised would disadvantage her, petitioner seeks a remand that would enable her to submit additional evidence into the IRS administrative record.

The Taxpayer First Act (Act), Pub. L. No. 116-25, sec. 1203, 133 Stat. at 988 (2019), added section 6015(e)(7) and (f)(2) to the Code.  Subsection (e)(7) addresses the scope and standard of our review in stand-alone innocent spouse cases.  Subsection (f)(2) sets forth a limitation on the Secretary's authority to grant requests for equitable relief.

---

[1]Unless otherwise noted, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times.

Congress specified that the amendments effected by Act sec. 1203(b) "shall apply to petitions or requests filed or pending on or after" July 1, 2019, the date of the enactment. We interpret this provision to mean that section 6015(e)(7) is effective for petitions filed in this Court on or after July 1, 2019, and that section 6015(f)(2) is effective for requests pending with the IRS on or after that date. Because petitioner filed her petition in this Court before July 1, 2019, we hold that subsection (e)(7) does not apply to this case.

Given the amendment's inapplicability, the scope and standard of review in this case remain de novo. See Porter v. Commissioner, 132 T.C. 203, 206-210 (2009). That being so, the premise for petitioner's request for a remand disappears, and a remand would serve no useful purpose. Because we will deny her remand motion for that reason, we need not address her request that we reconsider our holding in Friday as applied to cases governed by the amendment.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the attached exhibits. These facts are stated solely for the purpose of ruling on the pending motion to remand and not as findings of fact in this case. See Whistleblower 769-16W v. Commissioner, 152 T.C. 172, 173 (2019). Petitioner resided in Massachusetts when she filed her petition.

In 2010 petitioner's husband was indicted for tax crimes. He pleaded guilty, and as part of his plea agreement he was required to submit delinquent tax returns for 2005 and 2006 (among other years). Petitioner avers that she did not have an independent filing obligation for 2005 or 2006 but believed she was required to file joint returns with her husband. She signed the returns, as he requested, in the courthouse cafeteria less than an hour before his sentencing on June 29, 2011.

On September 1, 2016, petitioner filed a Form 8857, Request for Innocent Spouse Relief, for 2005 and 2006. On that form she stated that she had signed the returns during a "confusing and emotional" period, that the returns had been prepared by her husband's accountant with no input from her, and that she simply signed the returns as instructed. She did not mark the box on the Form 8857 indicating that she had any mental or physical health problems at that time, believing that a "yes" answer would have required that she secure a medical diagnosis.

On April 24, 2017, petitioner received a preliminary determination denying her request, and she timely appealed. Her case was assigned to an Appeals officer (AO) in the IRS Appeals Office in Covington, Kentucky (Appeals Office). Petitioner appointed a representative to act on her behalf.

Following several conversations with the AO, petitioner's representative formed the view that the AO was not properly applying the factors governing peti-

tioner's entitlement to relief and had made up his mind to deny her request. Believing that no further progress could be made at the Appeals Office and that his client would receive a de novo scope of review in this Court, the representative declined to submit additional evidence. The AO accordingly closed the case and on November 15, 2017, issued a determination letter denying petitioner's request.

After timely petitioning this Court, petitioner filed on November 11, 2019, a motion to remand. She contends that the amended scope of review ordained by section 6015(e)(7) will disadvantage her by preventing her from introducing evidence outside the IRS administrative record unless she can show that such evidence is "newly discovered or previously unavailable." She asks that we remand the case to the Appeals Office to enable her to introduce into the administrative record evidence concerning (among other things) her mental state when she signed the returns. Respondent opposes the motion, contending that remand is not permitted in a stand-alone innocent spouse case such as this.

## Discussion

### A. Innocent Spouse Relief

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3). In certain circumstances, how-

ever, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015.

Section 6015(b) specifies general procedures for relief from liability, and subsection (c) specifies procedures to limit liability for taxpayers who are no longer married or are living separately. Section 6015(f)(1)(B) provides that "equitable relief" may be afforded to a taxpayer if "relief is not available to such individual under subsection (b) or (c)." Petitioner's claim for relief is an equitable claim under section 6015(f).

"Under procedures prescribed by the Secretary" such relief may be available if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)." Sec. 6015(f)(1)(A); see sec. 1.6015-4(a), Income Tax Regs. The Commissioner has specified procedures governing equitable relief. See Rev. Proc. 2013-34, 2013-43 I.R.B. 397. Relevant factors include (among others) the requesting spouse's marital status, knowledge about information on the return, and mental or physical health. Id. sec. 4.03(2), 2013-43 I.R.B. at 400-403. The mental or physical health factor is evaluated as of the time the return was filed. Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403.

B.    Scope and Standard of Review

Section 6015(e) permits a taxpayer who is denied innocent spouse relief to file a petition for review in this Court. "Such cases are referred to as 'stand alone' cases, in that they are independent of any deficiency proceeding." Davidson v. Commissioner, 144 T.C. 273, 273-274 (2015). As originally enacted section 6015 did not prescribe the scope or standard of review for equitable relief claims under subsection (f). Before 2006 we generally reviewed denial of relief for abuse of discretion. See Butler v. Commissioner, 114 T.C. 276, 291-292 (2000). However, following amendments to section 6015 in 2006 we decided that the proper scope and standard of review were de novo. See Porter, 132 T.C. at 206-210.

In 2019 Congress made two amendments to section 6015, both of which concerned claims for equitable relief. Act sec. 1203(a)(1) added section 6015(e)(7) to the Code. Captioned "Standard and Scope of Review," it was de-signed to clarify the scope and standard of review in this Court, which had been the subject of differing appellate precedent. See H.R. Rept. No. 116-39, at 40 (2019). Section 6015(e)(7) provides:

> Any review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon--
>
> > (A) the administrative record established at the time of the determination, and

(B) any additional newly discovered or previously unavailable evidence.

Act sec. 1203(a)(2) added subsection 6015(f)(2) to the Code.  Captioned "Limitation," it provides:

> A request for equitable relief under this subsection may be made with respect to any portion of a liability that--
>
> > (A) has not been paid, provided that such request is made before the expiration of the applicable period of limitation under section 6502, or
> >
> > (B) has been paid, provided that such request is made during the period in which the individual could submit a timely claim for refund or credit of such payment.

Act sec. 1203(b) specified that these amendments "shall apply to petitions or requests filed or pending on or after the date of the enactment of this Act."  We must decide how the effective date provision applies to this case.[2]

---

[2]In several recent cases we had no occasion to decide the applicability of section 6015(e)(7), noting that it would not have affected the outcome.  See Lassek v. Commissioner, T.C. Memo. 2019-145, at *2 n.2; Jones v. Commissioner, T.C. Memo. 2019-139, at *2 n.2;  Kruja v. Commissioner, T.C. Memo. 2019-136, at *8 n.4; cf. Rogers v. Commissioner, T.C. Memo. 2020-91, at *14 ("The parties agree that the evidence taken at trial * * * was 'previously unavailable' in the administrative record[.]"); Sleeth v. Commissioner, T.C. Memo. 2019-138, at *3 ("We decide this case pursuant to section 6015(e)(7) as the administrative record has been stipulated into evidence and the testimony taken at trial was not available in the administrative record.").

C.    The Effective Date for Subsection (e)(7)

On its face the effective date provision is ambiguous. "[P]etitions or requests filed or pending" could mean "petitions filed or pending, or requests filed or pending." Alternatively, it could mean "petitions filed or requests pending." If the former reading is adopted, so that "pending" modifies both "petitions" and "requests," subsection (e)(7) likely would apply here because this case was pending in this Court when the amendment was enacted. If the latter meaning is adopted, so that "pending" modifies only "requests" and "filed" modifies only "petitions," subsection (e)(7) would not apply. Petitioner's request for innocent spouse relief had been resolved by the IRS, and hence was not "pending," on or after July 1, 2019. And her petition to this Court was filed before that date.

This is an example of structural (also called syntactic) ambiguity. It arises where a sentence is susceptible to more than one meaning because of the way the words or phrases are organized. See Catherine Anderson, Essentials of Linguistics, ch. 9.1, Ambiguity (2018) (ebook), https://essentialsoflinguistics.pressbooks. com/chapter/9-2-ambiguity/ (last visited Aug. 6, 2020). Clues to the meaning of such sentences can be supplied by the context and by other linguistic and interpretive tools.

For example, assume a municipal ordinance that is effective for "cars or boats parked or docked" at a city marina after a specified date. This provision would logically be interpreted to refer to "cars parked or boats docked." That is because each adjective comfortably modifies only one noun.

On the other hand, assume a sales tax that is effective for "cars or trucks sold or leased" after a specified date. Unless the context suggested otherwise, this provision would likely be interpreted to refer to "cars sold or leased, or trucks sold or leased." Both adjectives comfortably modify both nouns, and it would be odd to have different tax treatment for similar transactions involving similar vehicles.

We conclude that Act sec. 1203(b) more closely resembles the first example above. We have discovered no instance in which Congress, either in the Code or in an uncodified effective date provision, has used the phrase "petition(s) pending" when referring to ongoing matters in our Court. And interpreting Act sec. 1203(b) to refer to "petitions filed [in this Court] or requests pending [with the IRS]" on or after the effective date makes logical sense in light of the statutory context.

Needless to say, the Code regularly refers (in various ways) to "petition(s) filed" in this Court.[3] Effective date provisions likewise key the applicability of

---

[3]See, e.g., sec. 7433(b) (referring to a "petition filed"); sec. 7463(a) (referring to "any petition filed" in small tax cases); sec. 7451 (imposing a fee for
(continued...)

statutory amendments to whether a petition has been filed in our Court.[4]  But a search for instances in which "petition" appears within 10 words of "pending" yields only one result--the effective date provision for subsection (e)(7).  And in this one instance "pending" does not unambiguously modify "petition."

When Congress intends to refer to ongoing matters in our Court, it has invariably used phrases like "cases pending" or "proceedings pending."[5]  And the absence from the Code of the phrase "petitions pending" makes linguistic sense.  "Pending" means "remaining undecided" or "awaiting decision."  Black's Law

---

[3](...continued)
the "filing of any petition").  A search of the Code for some form of "file" appearing within 10 words of "petition" yields at least 50 results.

[4]For example, when amending section 6015 to add subsection (e)(6), Congress made the amendment effective for "petitions filed under section 6015(e) * * * after the date of * * * enactment."  See Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, sec. 424(a), 129 Stat. at 3124 (2015).  Effective dates for amendments to other sections are similarly worded.  See, e.g., Miscellaneous Revenue Act of 1982, Pub. L. No. 97-362, sec. 106(a)(2), 96 Stat. at 1730 ("The amendment made by this subsection shall apply with respect to petitions filed after the date of the enactment of this Act."); Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, sec. 751(b), 95 Stat. at 349 ("The amendment made by this section shall apply to petitions filed after December 31, 1981.").

[5]See, e.g., sec. 6331(i)(1) (providing that no levy may be made "during the pendency of any proceeding"); sec. 6871(c)(1) (referring to "the pendency of proceedings * * * pursuant to a petition to the Tax Court"); sec. 7422(j)(2)(C) (making that subsection applicable if "there is no case pending in the Tax Court" and "the time for filing a petition with the Tax Court * * * has expired").

Dictionary (11th ed. 2019). A request is properly described as "pending" until a decision is made whether it will be granted or denied. Similarly, a petition for writ of certiorari is properly described as "pending" because the Supreme Court has discretion to grant or deny it.

But this Court has no discretion to accept or reject a taxpayer's petition. The petition is filed, and the case remains pending until we issue a decision. Thus, when Congress in effective date provisions has intended to refer to ongoing litigation in this Court, it has referred to "pending cases" or "pending proceedings" but never to "pending petitions."[6]

The structure of Act sec. 1203 strengthens our view that "filed" modifies only "petitions" and that "pending" modifies only "requests." Act sec. 1203(a)(1), containing new subsection (e)(7), is addressed solely to the scope and standard of

---

[6]See, e.g., Consolidated Appropriations Act, 2016, sec. 422(b), 129 Stat. at 3123 ("The amendments made by this section shall apply to cases pending as of the day after the date of the enactment of this Act, and cases commenced after such date of enactment."); id. sec. 431(c), 129 Stat. at 3125-3126 ("The amendments made by this section shall apply to proceedings commenced after the date which is 180 days after the date of the enactment of this Act and * * * all proceedings pending on such date."); Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 7731(d), 103 Stat. at 2402 ("The amendments made by this section shall apply to positions taken after December 31, 1989, in proceedings which are pending on, or commenced after such date."); Trademark Clarification Act of 1984, Pub. L. No. 98-620, sec. 403, 98 Stat. at 3361 ("The amendments made by this subtitle shall not apply to cases pending on the date of the enactment of this subtitle.").

review in our Court. Act sec. 1203(a)(2), containing new subsection (f)(2), is addressed solely to the Secretary's authority to grant requests for equitable relief. Act sec. 1203(b) provides that these amendments "shall apply to petitions or requests filed or pending on or after the date of the enactment." It is logical to interpret "petitions * * * filed" as setting forth the effective date for the first amendment, which deals with matters in our Court. And it is logical to interpret "requests * * * pending" as setting forth the effective date for the second amendment, which deals with requests received by the IRS.

The canon against superfluity confirms this result. Under this canon, in deciding on the proper interpretation of statutory text, "[i]t is our duty 'to give effect, if possible, to every clause and word of a statute.'" Duncan v. Walker, 533 U.S. 167, 174 (2001) (quoting United States v. Menasche, 348 U.S. 528, 538-539 (1955)). We are thus "'reluctan[t] to treat statutory terms as surplusage' in any setting." Id. (quoting Babbitt v. Sweet Home Chapter, Cmtys. for a Great Ore., 515 U.S. 687, 698 (1995)).

If we were to ignore Congress' customary usage of the term "pending" and read that term as modifying both "petitions" and "requests"--so that subsections (e)(7) and (f)(2) would apply respectively to "petitions filed or pending" and "requests filed or pending" on or after the effective date--then the word "filed" would

be rendered superfluous.  Under this reading, subsection (e)(7) would apply to all open cases in our Court on July 1, 2019, as well as to new cases that came to the Court thereafter, regardless of the dates on which the petitions were filed.  And subsection (f)(2) would apply to all requests pending in the IRS on July 1, 2019, as well as to new requests received by the IRS thereafter, regardless of the dates on which the requests were made.

But if that was the result Congress wished to achieve, it could have referred simply to "petitions or requests pending" on or after the effective date.  The universe of "petitions or requests pending" on or after July 1, 2019, is the same as the universe of "petitions filed or pending" and "requests filed or pending" on or after that date.  Put simply, this alternative reading leaves no work for the word "filed" in the effective date provision, in direct conflict with our established practice of giving effect "to every clause and word of a statute."  See, e.g., Klein v. Commissioner, 149 T.C. 341, 355 (2017) (citing Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004), and Negonsott v. Samuels, 507 U.S. 99, 106 (1993)).

For these reasons, we conclude that Act sec. 1203(b) should be interpreted to make section 6015(e)(7) effective for petitions filed in this Court on or after July 1, 2019, and to make section 6015(f)(2) effective for requests pending in the IRS on or after that date.  Subsection (e)(7) is thus inapplicable to cases such as

this, where the petition was filed before the effective date but the case remained pending in this Court thereafter. This interpretation is consistent with the textual and structural evidence discussed above. It also has the merit of preventing inequitable results that Congress presumably would have wished to avoid when prescribing the transition to the amended scope of review ordained by subsection (e)(7).

For every request for innocent spouse relief pending with the IRS on or after July 1, 2019, the taxpayer had the opportunity to adjust her evidentiary submissions in light of the fact that the scope of our review would be limited to the administrative record (apart from newly discovered or previously unavailable evidence). And for most or all petitions filed in this Court on or after July 1, 2019, the taxpayer would have completed the administrative process after that date and have been aware of the need to fully develop the administrative record.[7]

But if subsection (e)(7) were to apply to cases such as this--where the conclusion of the administrative process and the filing of the petition both preceded

---

[7]Some taxpayers might have received a determination letter shortly before July 1, 2019, with their petition to this Court due to be filed thereafter. See sec. 6015(e)(1)(A). It is not clear whether an AO could have reopened the case to permit introduction of additional evidence in such circumstances. However, the determination letter issued in response to innocent spouse requests invites the taxpayer to call if she has questions about the final determination.

July 1, 2019, but the case remained pending in this Court thereafter--a sort of "gotcha" could occur. The taxpayer would have gone through the administrative process believing that the scope of review in this Court was de novo. But she would then learn, once the time came for trial, that the scope of review was not de novo and that she could be prejudiced for not having made a more complete administrative record.

By amending the statute to provide that this Court's review would be limited to the administrative record (apart from previously unavailable or newly discovered evidence), Congress incentivized taxpayers to cooperate with the IRS by building a complete record during the administrative process. By making Act sec. 1203(a) of the Act effective "on or after" July 1, 2019, Congress gave the amendments prospective effect only. But if the revised scope of review in subsection (e)(7) were applicable to cases like this, that amendment would have a kind of retroactive effect, punishing taxpayers whom it is too late to incentivize.

In sum, using the linguistic tools at our disposal, considering the amendment's overall context, and applying the anti-surplusage canon, we conclude that the effective date provision is best interpreted to make subsection (e)(7) applicable only to petitions filed in this Court on or after July 1, 2019. Petitioner filed her

petition on February 20, 2018, more than 16 months before the amendment took effect. We accordingly hold that section 6015(e)(7) has no application here.

D.    Motion To Remand

This Court has previously declined to remand stand-alone innocent spouse cases under section 6015(f). See Friday, 124 T.C. at 221-222. Petitioner urges that we reconsider that holding as applied to cases governed by the 2019 amendment. Representing that the scope of review as revised by subsection (e)(7) would disadvantage her, she seeks a remand to the Appeals Office that would enable her to submit additional evidence into the administrative record.

Because we hold that section 6015(e)(7) does not apply, the scope and standard of review in this case will remain de novo, consistently with our case law predating the amendment. See Porter, 132 T.C. at 210. Petitioner will thus be free to introduce at trial any competent evidence that she desires. Because the premise for her motion to remand thus disappears, a remand (if we could order one) would serve no useful purpose. We will accordingly deny her motion for that reason. Cf. Burke v. Commissioner, 124 T.C. 189, 194 n.5 (2005) (declining to remand a collection due process case because a remand would not be productive); Whistleblower 23711-15W v. Commissioner, T.C. Memo. 2018-34, 115 T.C.M. (CCH) 1154, 1156 n.7 (declining to remand a whistleblower case because a remand

would serve no useful purpose).  That being so, we have no need to address her request that we reconsider our holding in Friday as applied to cases that are governed by the amended statute.

In consideration of the foregoing,

An appropriate order will be issued.

Reviewed by the Court.

FOLEY, GALE, THORNTON, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, TORO, and GREAVES, JJ., agree with this opinion of the Court.